1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11  KAREN QUINLAN aka KAREN
    BETZLER, an individual;
12  BOB BETZLER, an individual,        No. 2:11-cv-00986-MCE-EFB

13            Plaintiffs,

14       v.                            <u>MEMORANDUM AND ORDER</u>

15  CITIMORTGAGE, INC., a New York
    Corporation; ALLIED
16  INTERNATIONAL CREDIT CORP., a
    Canadian Corporation; and
17  NATIONWIDE CREDIT, INC., a
    Georgia Corporation;
18  PENTAGROUP FINANCIAL LLC, a
    Texas Limited Liability
19  Company; AMERICAN CORADIUS
    INTERNATIONAL, LLC, a Delaware
20  Limited Liability Company;
    CITIFINANCIAL, INC., a
21  Maryland Corporation;
    CITIBANK, NATIONAL
22  ASSOCIATION, a federally-
    chartered National Bank;
23
              Defendants.
24

25                       ----oo0oo----

26  ///

27  ///

28  ///

1

1    Presently before the Court is a Motion to Dismiss filed on
2  behalf of Defendant Citimortgage, Inc. ("CMI"), CITIFINANCIAL,
3  INC.("CFI"), and CITIBANK, N.A.("CITI")(herein collectively
4  referred to as "the CITIBANK Defendants" unless otherwise noted).
5  The motion is brought on grounds that the Plaintiffs added new
6  parties without proper leave of the court and that Plaintiff
7  Quinlan's claim for violation of the Rosenthal Act against
8  CITIBANK Defendants is time-barred and does not provide
9  sufficient facts to establish a claim against the CITIBANK
10 Defendants for which relief can be granted under Rule 12(b)(6) of
11 the Federal Rules of Civil Procedure.  In addition, the CITIBANK
12 Defendants assert that Plaintiff Quinlan's claim for breach of
13 contract fails against Defendants CFI and CITI because she had no
14 contract with them. Finally, the CITIBANK Defendants submit that
15 Plaintiffs have failed to establish the required elements of the
16 invasion of privacy tort they attempt to allege.
17    As set forth below, the CITIBANK Defendants' Motion will be
18 denied in its entirety.[1]
19
20                         **BACKGROUND**
21
22    According to Plaintiffs' Third Amended Complaint ("TAC"),[2]
23 Plaintiff Karen Quinlan obtained a home mortgage loan in the
24 amount of $7,152.15 on or about March 18, 1999.
25 ────────────────
26    [1] Because oral argument will not be of material assistance,
   the Court ordered this matter submitted on the briefs. E.D. Cal.
27 Local Rule 230(g).

28    [2] All factual allegations contained within this section are
   taken from Plaintiffs' TAC unless otherwise specified.

                              2

1  Under the terms of the operative promissory note, "[b]eginning on
2  the tenth anniversary from the date [of the note], all principal
3  and deferred interest repayment obligations shall be forgiven
4  free and clear."  TAC, ¶ 15.

5      At some point before the loan's tenth anniversary, the
6  instrument was transferred to CMI.  Plaintiffs allege that in
7  contravention of the terms of the note, CMI contacted them
8  demanding repayment of the note after the ten-year period.  TAC,
9  ¶ 19.  CMI threatened to accelerate the alleged amount due and
10 report the note as delinquent to national credit bureaus.  On
11 April 23, 2009, however, Plaintiffs claim they spoke to a CMI
12 representative, Troy Goddard, who stated that no balance was due
13 and confirmed that the debt had been forgiven.

14     Although Plaintiffs accordingly believed the issue had been
15 resolved, only a few months later they began to receive contacts
16 from debt collection agencies demanding full repayment of the
17 $7,152.15 principal balance on the loan.  Plaintiffs allege that
18 they were contacted by some four different agencies between
19 September 15, 2009 and August 5, 2011.  Plaintiffs claim that the
20 debt collection agencies acted on behalf of the CITIBANK
21 Defendants, alleging that "At all times, the collection agencies,
22 including Defendants Allied International Credit Corp.,
23 Nationwide Credit, Inc., Pentagroup Financial, LLC, and American
24 Coradius International, LLC, have acted as the agents for
25 Defendants CitiMortgage, Inc. or Citifinancial Inc. or Citibank,
26 National Association for the purpose of collecting the debt
27 allegedly owed by Plaintiff Karen Quinlan."  TAC, ¶ 13.
28 ///

1  More specifically, Plaintiffs allege that the letters they
2  received from the collection agencies represented that they were
3  collecting the debt on behalf of each of the CITIBANK Defendants.
4  (See TAC ¶ 26, 31, 34, 36, 41, 44.)

5      Plaintiffs filed the instant action on April 13, 2011, and
6  allege a variety of state and federal claims against the three
7  CITIBANK Defendants, as well as against four collection agencies.
8  The CITIBANK Defendants now move to dismiss the claims that
9  Plaintiffs have asserted.

10
11                          **STANDARD**
12
13      On a motion to dismiss for failure to state a claim under
14  Federal Rule of Civil Procedure 12(b)(6),[3] all allegations of
15  material fact must be accepted as true and construed in the light
16  most favorable to the nonmoving party.  Cahill v. Liberty Mut.
17  Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2)
18  requires only "a short and plain statement of the claim showing
19  that the pleader is entitled to relief" in order to "give the
20  defendant fair notice of what the [. . .] claim is and the
21  grounds upon which it rests."  Bell Atl. Corp. v. Twombly,
22  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,
23  47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to
24  dismiss does not require detailed factual allegations.
25  ///
26  ///
27  _____
28      [3] All further references to "Rule" or "Rules" are to the
   Federal Rules of Civil Procedure unless otherwise noted.

                                4

1  However, "a plaintiff's obligation to provide the grounds of his

2  entitlement to relief requires more than labels and conclusions,

3  and a formulaic recitation of the elements of a cause of action

4  will not do." Id. (internal citations and quotations omitted).

5  A court is not required to accept as true a "legal conclusion

6  couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct.

7  1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual

8  allegations must be enough to raise a right to relief above the

9  speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles

10  Alan Wright & Arthur R. Miller, Federal Practice and Procedure

11  § 1216 (3d ed. 2004) (stating that the pleading must contain

12  something more than "a statement of facts that merely creates a

13  suspicion [of] a legally cognizable right of action.")).

14      Furthermore, "Rule 8(a)(2). . . . requires a showing, rather

15  than a blanket assertion, of entitlement to relief." Twombly,

16  550 U.S. at 556 n.3 (internal citations and quotations omitted).

17  Thus, "[w]ithout some factual allegation in the complaint, it is

18  hard to see how a claimant could satisfy the requirements of

19  providing not only 'fair notice' of the nature of the claim, but

20  also 'grounds' on which the claim rests." Id. (citing 5 Charles

21  Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading

22  must contain "only enough facts to state a claim to relief that

23  is plausible on its face." Id. at 570. If the "plaintiffs . . .

24  have not nudged their claims across the line from conceivable to

25  plausible, their complaint must be dismissed." Id.

26  ///

27  ///

28  ///

1   However, "[a] well-pleaded complaint may proceed even if it

2   strikes a savvy judge that actual proof of those facts is

3   improbable, and 'that a recovery is very remote and unlikely.'"

4   Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

5

6

7                              **ANALYSIS**

8

9       **A.   Adding New Parties CFI and CITI.**

10

11      Defendants assert that the Court's November 2, 2011 Order on

12  CMI's Motion to Dismiss granted Plaintiffs leave to amend

13  existing Claims for Relief, not permission to add new parties.

14  Although Defendants CFI and CITI appear to argue that they are

15  new parties, examination of the Second Amended Complaint reveals

16  that both were included as parties.  The Third Amended Complaint

17  has only added CFI and CITI as defendants to certain additional

18  causes of action.  Such additions came within the purview of the

19  leave to amend previously granted by the Court.  Defendants'

20  motion to dismiss on that ground accordingly fails.

21

22      **B.   Violation of the Rosenthal Act.**

23

24      California's Rosenthal Act regulates the collection of

25  "consumer debts," which are defined as transactions pursuant to

26  which "property, services or money is acquired on credit...

27  primarily for personal, family, or household purposes."

28  ///

                                6

1   Cal. Civ. Code § 1788.2(e)-(f).  The limitations period for
2   pursuing a claim premised on the Rosenthal Act is one year from
3   the date of an alleged violation.  Id. at § 1788.30(f).
4
5          **1.  Agency Relationship.**
6
7       CITIBANK Defendants first argue that Plaintiff Quinlan's
8   second Claim for Relief, for violation of the Rosenthal Act,
9   fails because Plaintiffs have not adequately demonstrated an
10  agency relationship between the collection agencies and the
11  CITIBANK Defendants.
12      However, the Plaintiffs have met the pleading standard
13  required to demonstrate that the collection agencies were in fact
14  acting as agents on behalf of each of the CITIBANK Defendants.
15  As stated above, the Court must view all issues of material fact
16  in the light most favorable to the nonmoving party. Cahill v.
17  Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996).  In
18  doing so, the fact that the collection agencies purportedly
19  admitted they were parties working on behalf of the various
20  CITIBANK Defendants, coupled with the detailed information the
21  agencies had collected presumably from those Defendants, renders
22  it plausible that the collection agencies were in fact acting as
23  agents on behalf of the CITIBANK Defendants in violation of the
24  Rosenthal Act.  Defendants GC Services, Allied International
25  Credit Corporation, and Nationwide Credit Recovery, for example,
26  all represented that they were collecting the alleged debt on
27  behalf of CMI and demanded the exact original value of the loan.
28  See TAC, ¶ 31, 34, 36.

                                    7

1    Defendant Pentagroup Financial offered a settlement to Plaintiff
2    Betzler on behalf of CFI and represented that they were
3    collecting the alleged debt on behalf of CFI.  <u>Id.</u> at ¶ 41.
4    Later, Defendant Nationwide Credit Recovery indicated that they
5    were representing Defendant CITI and demanded full repayment of
6    the principal of Plaintiffs' alleged debt.  <u>Id.</u> at ¶ 44.

7        The fact that the collection agencies represented themselves
8    as agents working on behalf of the CITIBANK Defendants is
9    significant, since the collection agencies by law cannot make any
10   "false, deceptive or misleading" statements regarding who they
11   represent.  15 U.S.C. § 1692e.  Given that proscription, the
12   Court must assume they followed the law and correctly represented
13   by Plaintiffs who they represented as set forth in the TAC.

14       The Court concludes that Plaintiffs have alleged enough
15   facts, for purposes of surviving a motion to dismiss, that the
16   CITIBANK defendants shared an agency relationship with the
17   collection agencies.

18
19                **2.   Statute of Limitations.**
20
21       The CITIBANK Defendants next argue that Plaintiff Quinlan's
22   Rosenthal Act claim is time-barred in any event because the TAC
23   does not specifically allege conduct by the CITIBANK Defendants
24   which occurred within one year before the filing of Plaintiffs'
25   complaint on April 13, 2011.
26   ///
27   ///
28   ///

1   The so-called "continuing violation doctrine," however,
2   allows Plaintiffs to overcome the defendants' statute of
3   limitations defense. "The key is whether the conduct complained
4   of constitutes a continuing pattern and course of conduct as
5   opposed to unrelated discrete acts.  If there is a pattern, then
6   the suit is timely if 'the action is filed within one year of the
7   most recent [violation]' [citation], and the entire course of
8   conduct is at issue."  <u>Komarova v. Nat'l Credit Acceptance, Inc.</u>,
9   175 Cal. App. 4th 324, 343, 95 Cal. Rptr. 3d 880, 894 (2009)
10  <u>citing</u> <u>Joseph v. J.J. MacIntyre Companies, L.L.C.</u>,
11  281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003).  Determining whether
12  the myriad phone calls constitute a "continuing pattern" as
13  opposed to unrelated acts is a fact-intensive matter not amenable
14  to disposition on a motion to dismiss.

15  In this case, a reasonable trier of fact could plausibly
16  find that the pattern of calls received by the Plaintiffs
17  satisfies the continuing violation doctrine.  Each of the
18  CITIBANK Defendants, through their alleged agents, did contact
19  the Plaintiffs within one year of the filing date of the
20  Plaintiffs' complaint on April 13, 2011.  In fact, both CITI and
21  CFI contacted the Plaintiffs through their respective alleged
22  agents even after the complaint was filed, according to the TAC.[4]
23  CMI contacted the Plaintiffs on July 15, 2010, also within the
24  one year period of the filing date.  TAC, ¶ 36.
25  ///

26
27  [4] CFI, through Defendant Pentagroup Financial, contacted
    Plaintiff Betzler as recently as July 26, 2011. (TAC, ¶ 42).
    CITI, through Defendant Nationwide Credit Recovery, contacted
28  Plaintiff Quinlan on August 3, 2011. (TAC, ¶ 44).

1   A reasonable trier of fact could find that these recent contacts
2   were part of a continuous pattern of contact with the Plaintiffs.

3       This court cannot conclude at this juncture that Plaintiff
4   Quinlan's Rosenthal Act claim is time barred. CITIBANK
5   Defendants' Motion to Dismiss therefore fails on that ground as
6   well.

7

8       **C.**   **Breach of Contract Claim.**

9

10       CITIBANK Defendants argue that Plaintiff Quinlan fails in
11   her Opposition to sufficiently establish that CFI and CITI were
12   parties to her contract. According to CITIBANK Defendants,
13   Plaintiff Quinlan's claims are merely conclusory and do not
14   provide facts which would plausibly establish that CFI or CITI
15   became parties to the contract through "transfer, assignment or
16   some other means." (Opposition p. 8:7-8.)

17       However, Plaintiffs do provide facts which, when viewed in
18   the light most favorable to Plaintiffs, are enough to survive a
19   motion to dismiss.  Pentagroup, a collection agency allegedly
20   working on behalf of CFI, represented that CFI had the authority
21   to reconvey the lien on the home owned by Plaintiffs, which would
22   have required CFI be a party to the contract. (Opposition
23   p. 8:9-11.)  As indicated above, collection agencies who
24   contacted Plaintiffs represented both CFI and CITI as their
25   clients.  With respect to CITI, Plaintiffs have also alleged that
26   there was an assignment or transfer of the debt from CMI to CITI.
27   TAC, ¶ 36.  It is plausible for pleading purposes that CITI, like
28   CFI, was made a party to the contract.

1  The motion to dismiss the breach of contract claim must therefore
2  be denied.

3

4      **D.  Invasion of Privacy Claim**

5

6      Because the Court has already determined that the collection
7  agencies, at least for pleading purposes, were working as agents
8  on behalf of the CITIBANK Defendants, Plaintiff may have
9  established a viable Invasion of Privacy claim, as pled in their
10 sixth claim for relief, by virtue of the agencies' allegedly
11 intrusive collection efforts both by mail and by telephone.
12     To state a viable invasion of privacy claim premised on
13 intrusion, Plaintiffs must show: (1) intrusion into a private
14 place, conversation or matter, and (2) in a manner highly
15 offensive to a reasonable person.  Shulman v. Group W
16 Productions, Inc., 18 Cal. 4th 200, 231, 955 P.2d 469, 490
17 (1998).

18

19        **1.   Intrusion into a Private Place.**

20

21     Courts have held that "repeated and continuous calls in an
22 attempt to collect a debt give rise to a claim for intrusion upon
23 seclusion." Fausto v. Credigy Services Corp., 598 F. Supp. 2d
24 1049, 1056 (N.D. Cal. 2009) citing Panahiasl, 2007 WL 738642, at
25 *3.  The Fausto court dismissed a motion for summary judgment on
26 the grounds that the issue of whether continuous calls
27 sufficiently establish an intrusion upon seclusion claim is fact-
28 intensive.  Id.

1    A number of courts have held that phone calls into a home

2 can potentially constitute an intrusion into a private place for

3 purposes of the first element.  See generally Fausto v. Credigy

4 Services Corp., 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009)

5 citing Panahiasl, 2007 WL 738642, at *3.  Joseph v. J.J.

6 MacIntyre Companies, LLC., 238 F. Supp. 2d 1158, 1169-1170 (N.D.

7 Cal. 2002).  Other cases have granted motions to dismiss claims

8 for intrusion on the "offensive manner" element, but have implied

9 that repeated phone calls to the home of the Plaintiff can

10 constitute an intrusion into a private place.  See Marseglia v.

11 JP Morgan Chase Bank, 750 F. Supp. 2d 1171 (S.D. Cal. 2010),

12 Castellanos v. JPMorgan Chase & Co., 09-CV-00969-H, 2009 WL

13 1833981 (S.D. Cal. June 23, 2009).  Therefore, a reasonable trier

14 of fact could conclude that the numerous phone calls and mailings

15 to the Plaintiffs satisfy the first element of the intrusion tort

16 as a continued intrusion into a private place.

17

18            **2.   Highly Offensive to a Reasonable Person**.

19

20    Likewise, a reasonable trier of fact could find that the

21 contacts were highly offensive to a reasonable person. In

22 determining the "offensiveness" of an invasion of a privacy

23 interest, common law courts consider, among other things: "the

24 degree of the intrusion, the context, conduct and circumstances

25 surrounding the intrusion as well as the intruder's motives and

26 objectives, the setting into which he intrudes, and the

27 expectations of those whose privacy is invaded."  Deteresa v. Am.

28 Broad. Companies, Inc., 121 F.3d 460, 465 (9th Cir. 1997).

1   Whether contacts were highly offensive should only be dismissed
2   as a matter of law "... if the undisputed material facts show no
3   reasonable expectation of privacy or an insubstantial impact on
4   privacy interests." Id.

5        This Court cannot find as a matter of law that numerous
6   phone calls and mailings demanding collection of a non-existent
7   debt, accompanied by the underlying threat of losing one's home,
8   would not be highly offensive to a reasonable person.  As
9   recognized by the Ninth Circuit in Deteresa, whether or not the
10  particular circumstances of the case are indeed highly offensive
11  is a matter to be determined by the trier of fact.

12       Both elements of the intrusion tort could reasonably be
13  found to be present given the allegations present in the TAC.
14  Therefore, the Defendants' Motion to Dismiss Plaintiff's invasion
15  of privacy claim (premised on intrusion into seclusion) is
16  denied.

17
18                            **CONCLUSION**
19
20       For all the foregoing reasons, CITIBANK Defendants' Motion
21  to Dismiss Plaintiffs' Third Amended Complaint (ECF No. 20) is
22  denied in its entirety.

23       IT IS SO ORDERED.
24   Dated: June 21, 2012

25
26                         _____
27                         MORRISON C. ENGLAND, JR.
28                         UNITED STATES DISTRICT JUDGE

                                13